

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

9. WAIVERS

(Seal)

PAY TO THE ORDER OF

WITHOUT RECOURSE

(Sign Original Only)

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
P.O. BOX 5064
TROY, MICHIGAN 48084
ATTN:FINAL/TRAILING DOCUMENTS

Prepared & Return to:
Sovereign Search & Abstract, Co.
1126A Horsham Road
Ambler, PA 19002
Tel: (215)355-1199



LOAN #

[Space Above This Line For Recording Data]

## MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 27, 2003, together with all Riders to this document.
(B) "Borrower" is DONALD W PRICE, A SINGLE MAN.

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is ABN AMRO MORTGAGE GROUP, INC.

Initials: _____

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1-01
© 1999-2002 Online Documents, Inc.    Page 1 of 16    PAUDEED    PAUDEDL 0211

PA36971 2096

Lender is a CORPORATION organized and existing under the laws of DELAWARE. Lender's address is 2600 W. BIG BEAVER RD., TROY, MICHIGAN 48084.

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated OCTOBER 27, 2003. The Note states that Borrower owes Lender ********SEVENTY NINE THOUSAND AND NO/100 *************************************** Dollars (U.S. $79,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2028.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☒ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3038 1/01
© 1999-2002 Online Documents, Inc.  Page 2 of 15  PAU3038

1436971:2100

LOAN #:

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the    COUNTY

[Type of Recording Jurisdiction] of    BUCKS    [Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of    404 MEWS DR, SELLERSVILLE,

[Street] [City]

Pennsylvania    18960    ("Property Address"):
                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01
© 1999-2002 Online Documents, Inc.    Page 3 of 16    PAUDEDL

APN#

Servicer Loan #

**After Recording Return To:**
CitiMortgage, Inc.
1000 Technology Drive, MS 420
O'Fallon, MO 63368-2240
Doc Prep/Booking & Closing

This document was prepared by: Tejas Dharod
With an office address of:
CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 63368

_____[Space Above This Line For Recording Data]_____

**Original Principal Amount: $ 79,000.00**
**Unpaid Principal Amount: $ 60,923.87**
**New Principal Amount: $ 69,407.28**
**New Money (Cap): $ 8,483.41**

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Modification Agreement"), made this 02nd day of January, 2015, between DONALD W PRICE, A SINGLE MAN, ("Borrower") and ("Lender") CitiMortgage, Inc., Successor by Merger to ABN AMRO Mortgage Group, Inc., amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 10/27/03 and recorded on 11/07/03 in Book or Liber 3697, at page(s) 2098-2118, or Document # 222286 of the BUCKS Records of BUCKS County, Pennsylvania and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 404 MEWS DR, SELLERSVILLE, PA 18960, the real property described being set forth as follows:

See attached legal description

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

**1. Modified Principal Balance.** As of 01/01/15, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $ 69,407.28 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized

**2. Modified Terms.** $ 0.00 of the Unpaid Principal Balance shall be deferred and Borrower will not pay interest or make monthly payments on this amount. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 69,407.28. Interest at the rate of 5.87500%, will begin to accrue on the "Interest Bearing Principal Balance" as of 01/01/15 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 02/01/15. Borrower promises to make monthly payments of principal and interest of U.S. $ 375.86, beginning on the 01 day of February, 2015, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full.

The new Maturity Date will be 01/01/55.
*The escrow payments may be adjusted periodically in accordance with applicable law and therefore borrower's total monthly payment may change accordingly.

**3. Deferred Principal Balance.** If any portion of the New Principal Balance was deferred, Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

**4. Partial Prepayments.** If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

**5. Due on Sale.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

**6. Original Loan Documents Compliance.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   b. all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

**7. Rights and Remedies; Enforcing Modification Agreement.** Borrower understands and agrees that:

   a. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b. All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Modification Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security

Case 22-10070-amc    Doc 48-1    Filed 06/23/22    Entered 06/23/22 19:12:15    Desc
Case 22-10070-amc    C...m 4-1 Exhibit Part 3    Filed 03/21/22    Desc Loan Trail (1)    Page 4
                                        Page 8 of 20                                    of 15

Instrument are expressly reserved by Lender.

c. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d. All costs and expenses incurred by Lender in connection with this Modification Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e. Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Modification Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f. If the Borrower does not occupy the property as a principal residence, and property is an investment property, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Also, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Modification Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default

occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**8. Escrow Items.** Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

**9. Bankruptcy Provision.** Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Modification Agreement, I understand that I enter this Modification Agreement voluntarily and that this Modification Agreement, or actions taken by the Lender in relation to this Modification Agreement, does not constitute a demand for payment or an attempt to collect any such obligation

**10. Signature Requirements.** Borrower(s) understand that the Lender's consent to this Modification Agreement is conditioned upon all Borrower(s) properly signing and returning this Modification Agreement without any alterations or deletions and making all monthly payments when due. Any person signing below who signed the Security Instrument but who did not sign the Note is signing only to modify the Security Instrument and to consent to the modification of the Note and is not personally obligated to pay the amounts owed under the Note or the sums Secured by the Security Instrument.

**11.** That, as of the Modification Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Modification Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

(N/A) **MERS LOANS** If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address of 1901 E Voorhees Street Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026 and telephone number, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to take certain actions required of Lender including, but not limited to, releasing and cancelling the mortgage loan.

EXECUTED effective as of the day and year first above written.

ACCEPTED AND AGREED TO BY -

CitiMortgage, Inc., Successor by Merger to
ABN AMRO Mortgage Group, Inc.

By: *[signature]*

Crystal Marino
Document Control Officer
CitiMortgage, Inc.

_____
Title

*[signature]*

DONALD W PRICE

2-15-15
Date

3-10-15
Date

LEGAL DESCRIPTION

ALL THAT CERTAIN Unit, designated as Unit Number 404 in the property known, named and identified as The Mews at Wyckford Commons, a Condominium, located partly in Sellersville Borough and partly in Perkasie Borough, Bucks County and Commonwealth of Pennsylvania, as designated in the Declaration of Condominium of Mews at Wyckford Commons dated September 11, 1989 and recorded in the Recorder of Deeds Office of Bucks County, at Doylestown, Pennsylvania on September 11, 1989 in Land Book 92 page 1241 &c., and Plats and Plans thereto labeled Exhibits "A" through "E" and recorded September 11, 1989 in Plan Book 253 page 27, and a First Amendment to Declaration of Condominium, recorded September 22, 1989 in Land Book 96 page 1481 and Plats and Plans thereto recorded September 22, 1989 in Plan Book 253 page 56 as Exhibits "A" through "D".

TOGETHER with all right, title and interest, being undivided interest of, in and to the Common Elements, as more fully set forth in the Declaration and the Plats and Plans, and any Amendments thereto together with all right, title and interest in and to all Limited Common Elements to the Unit, as more fully set forth in the Declaration and the Plats and Plans, and any Amendments thereto.

BEING UNIFORM PARCEL IDENTIFIER NUMBER

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

State of Missouri    )
                     )
County of St Charles )

On <u>March 10, 2015,</u> before me appeared <u>Crystal Marino</u>, to me personally known, being duly sworn or affirmed did say that she is a <u>Document Control Officer Of CitiMortgage, Inc.</u>, and that said instrument was signed on behalf of said corporation, by authority of its Board of Directors, <u>Crystal Marino</u> acknowledged said instrument to be the free act and deed of said corporation, and that such individual made such appearance before the undersigned in the City of O'Fallon, State of Missouri.

_____
Notary Public

KATRINA MASON
My Commission Expires
August 29, 2017
St. Louis County
Commission #13521426



1000 Technology Drive, MS 321
'O'Fallon, MO 63368-2240

Mortgage

March 10, 2015

DONALD W PRICE

404 MEWS DR
SELLERSVILLE, PA 18960-2737

Dear CitiMortgage Client(s):

Thank you for returning your signed modification documents for the property listed below:

404 MEWS DR
SELLERSVILLE, PA 18960

In accordance with your Modification program guidelines, we have enclosed a copy of your modification agreement signed by a CitiMortgage, Inc. officer. This agreement is for your records and no further action is necessary.

If you need additional assistance, please contact the CitiMortgage Customer Service Department at 1-800-283-7918*. TTY Services are also available. To access: Dial 711 from the United States or Dial 1-866-280-2050 from Puerto Rico. Customer Service Associates are available 7 days a week:

| Monday - Friday | 7:00 a.m. to 12:00 a.m., ET |
| Saturday | 8:00 a.m. to 8:00 p.m., ET |
| Sunday | 10:00 a.m. to 10:00 p.m., ET |

When contacting us, refer to your mortgage account number, 641394697.

We appreciate your business and look forward to serving you in the future.

Sincerely,

Document Processing
Modification Unit

Enclosure

CitiMortgage, Inc.

**BUCKS COUNTY RECORDER OF DEEDS**
55 East Court Street
Doylestown, Pennsylvania 18901
(215) 348-6203

Instrument Number - 2016029113
Recorded On 5/24/2016 At 1:08:55 PM        * Total Pages - 3
* Instrument Type - MORTGAGE ASSIGNMENT
Invoice Number - 799178          User - JLC
* Mortgagor - CITIMORTGAGE INC
* Mortgagee - DITECH FIN L L C
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
RECORDING FEES          $67.00
TOTAL PAID              $67.00

Bucks County UPI Certification
On May 24, 2016 By JK

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.

RETURN DOCUMENT TO:
NATIONWIDE TITLE CLEARING INC
2100 ALTERNATE 19 N
PALM HARBOR, FL 34683

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

Prepared By:
CitiLoans/NTC, 2100 Alt. 19 North,
Palm Harbor, FL 34683
(800)346-9152

When Recorded Return To:
CitiMortgage, Inc.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

CitiMortgage Loan No.
Ditech Loan Number

Tax Code/PIN/UPI:

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
- SELLERSVILLE BO
CERTIFIED 05/24/2016 BY JGS

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC. WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage dated 10/23/2003, in the amount of $79,000.00 made by DONALD W. PRICE to ABN AMRO MORTGAGE GROUP, INC. recorded on 11/07/2003, in the Office of the Recorder of Deeds of BUCKS County, in the State of Pennsylvania, in Book 3697, Page 2028 and Instrument # 222286.

Property is more commonly known as: 404 MEWS DR BORO OF SELLERSVILLE AND PERKASIE, SELLERSVILLE, PA 18960.

Dated this 24th day of May in the year 2016
CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC.

By: _Susan Schotsch_ (signature)
SUSAN SCHOTSCH
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

CitiMortgage Loan No
Ditech Loan Number

STATE OF FLORIDA, COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on this 24th day of May in the year 2016, by Susan Schotsch as VICE PRESIDENT of CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is/are personally known to me.

_____
NICOLE BALDWIN
COMM EXPIRES: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

Assignment of Mortgage from:
CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368, (ASSIGNOR),
to
DITECH FINANCIAL, LLC F/K/A GREEN TREE SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800/643-0202), ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)

Mortgagor: DONALD W. PRICE

All that certain lot or piece of ground situated in
Mortgage Premise: 404 MEWS DR BORO OF SELLERSVILLE AND PERKASIE
SELLERSVILLE, PA 18960
BUCKS
Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

**Certificate of Residence**

I, Susan Schotsch, do certify that the precise address of the within named Assignee is:
DITECH FINANCIAL, LLC F/K/A GREEN TREE SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800/643-0202), ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)

_____
SUSAN SCHOTSCH
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**BUCKS COUNTY RECORDER OF DEEDS**
65 East Court Street
Doylestown, Pennsylvania 18901
(215) 348-6209

Instrument Number - 2017040066
Recorded On 7/7/2017 At 8:40:35 AM                                    * Total Pages - 3
* Instrument Type - MORTGAGE ASSIGNMENT
Invoice Number - 881799            User - JLC
* Mortgagor - DITECH FIN L L C
* Mortgagee - NEW PENN FIN L L C
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
  RECORDING FEES              $67.00
  TOTAL PAID                  $67.00

Bucks County UPI Certification
On July 7, 2017 By SHY

This is a certification page

**DO NOT DETACH**

This page is now part
of this legal document.

RETURN DOCUMENT TO:
NATIONWIDE TITLE CLEARING INC.
2100 ALT 19 NORTH
PALM HARBOR, FL 34683

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* Information denoted by an asterisk may change during
  the verification process and may not be reflected on this page.

Prepared By:
E.Lance/NTC, 2100 Alt. 19 North,
Palm Harbor, FL 34683
(800)346-9152

When Recorded Return To:
Ditech Financial LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
                                    SELLERSVILLE BO
CERTIFIED 07/07/2017 BY SHY
```

Tax Code/PIN/UPI #:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **DITECH FINANCIAL, LLC F/K/A GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 2100 E. ELLIOT RD., TEMPE, AZ 85284**, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 55 BEATTIE PLACE, SUITE 300, GREENVILLE, SC 29601 (800)365-7107, ITS SUCCESSORS AND ASSIGNS**, (ASSIGNEE).

Said Mortgage dated 10/27/2003, in the amount of $79,000.00 made by **DONALD W PRICE** to **ABN AMRO MORTGAGE GROUP, INC** recorded on 11/07/2003, in the Office of the Recorder of Deeds of **BUCKS** County, in the State of **Pennsylvania**, in **Book 3697, Page 2098 and Instrument # 222286**.

Property is more commonly known as 404 MEWS DR BORO. OF SELLERSVILLE AND BORO. OF PERKASIE, SELLERSVILLE, PA 18960.

Dated this 06th day of July in the year 2017
DITECH FINANCIAL, LLC F/K/A GREEN TREE SERVICING LLC

By: _____
TIFFANY HANSEN
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA  COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on this 06th day of July in the year 2017, by Tiffany Hansen as VICE PRESIDENT of DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
CYNTHIA ALBANO
COMM EXPIRES: 08/01/2020

CYNTHIA ALBANO
Notary Public - State of Florida
My Comm. Expires August 1, 2020
Commission # GG061222

Assignment of Mortgage from:
DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 2100 E. ELLIOT RD., TEMPE, AZ 85284, (ASSIGNOR).
to
NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 55 BEATTIE PLACE, SUITE 300, GREENVILLE, SC 29601 (800)365-7107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)

Mortgagor: DONALD W PRICE

All that certain lot or piece of ground situated in
Mortgage Premises: 404 MEWS DR BORO. OF SELLERSVILLE AND BORO. OF PERKASIE
SELLERSVILLE, PA 18960
BUCKS
Borough or Township, if street, Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

### Certificate of Residence

I, Tiffany Hansen, do certify that the precise address of the within named Assignee is:
NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 55 BEATTIE PLACE, SUITE 300, GREENVILLE, SC 29601 (800)365-7107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)

_____
TIFFANY HANSEN
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.